IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ULTRATEC, INC. and CAPTEL, INC.,

                        Plaintiffs,

      v.

SORENSON COMMUNICATIONS, INC.
and CAPTIONCALL, LLC,

                        Defendants.

ORDER

13-cv-346-bbc

---

On July 14, 2014, defendants filed a motion to compel testimony and the production of withheld documents relating to Karen Peltz Strauss, plaintiffs' lawyer-lobbyist with the FCC in 2005-06. *See* dkt. *See* dkts. 281-83. Plaintiffs oppose disclosure, arguing that most of the documents are protected by the attorney-client privilege, with the remainder protected by the attorney work product privilege. *See* dkts. 293-94. For the reasons stated briefly below, I am denying defendants' motion for production of the documents for which plaintiffs are claiming attorney-client privilege, but I am granting the motion to disclose the three documents for which work product privilege is claimed. That being so, I am not reopening Attorney Strauss's deposition.

Defendants' main argument is that plaintiffs waived the attorney-client privilege when they opened the door by questioning Attorney Strauss during her deposition on the topics covered by the withheld documents. According to defendants, plaintiffs are attempting to have it both ways by selectively waiving the privilege to reveal only the communications that support plaintiffs' position while withholding testimony and documents that might undermine that position. *See* dkt. 282 at 13. Plaintiffs see it differently, characterizing defendants' motion as a contrived dispute.

The court held a telephonic hearing on July 23, 2014 at which it directed plaintiffs to submit the withheld documents for in camera review and it allowed the parties to provide additional case

citations in writing (rather than read them to the court during the hearing). *See* July 23, 2014 text-only order, dkt. 295. Defendants submitted a four-page, single-spaced letter brief on July 24 (dkt. 296), followed on July 25, 2014 by plaintiffs' objection to the unbidden post-hearing brief (dkt. 299). I did not want post-hearing briefs, I did not ask for post-hearing briefs and I have not read the post-hearing briefs. I *did* ask for and did review in camera the 41 documents at issue. (Dkt. 297, under seal and in camera).

### Attorney-Client Privilege

As a starting point, all of the documents for which plaintiffs claim attorney-client privilege qualify under the Wigmore test used by this circuit. *See United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997). The question becomes whether plaintiffs waived the privilege by allowing Attorney Strauss to answer questions at her February 25, 2014 deposition regarding what Strauss had told the FCC about Ultratec's position regarding licensing, including questions by plaintiffs' attorney about what message Strauss was trying to convey to the FCC on behalf of Ultratec. *See* quoted portions of the deposition transcript, dkt. 282 at 6-7. (The complete transcript is at dkt. 70).

If Attorney Strauss actually had revealed confidential communications with Ultratec's officers, then this would constitute waiver. *See, e.g., United States v. Brock*, 724 817, 821 (7th Cir. 2013)(citing *Hawkins v. Stables*, 148 F.3d 379, 384 (4th Cir. 1998). But that isn't what happened here. Strauss answered questions asking what she had told the FCC was Ultratec's position on licensing:

> Is it true that what you were communicating to the FCC was that Ultratec wasn't willing to essentially have licensed anyone . . . on any terms?
>
> * * *

> So the clarification was that [Ultratec] was not necessarily willing to
> license anybody and everybody?

When asked who at Ultratec conveyed the company's position to her, Strauss identified its CEO,

Robert Engelke.  According to defendants, this "clearly" opened the door, and defendants tried to

push through:

> Q:   Now that counsel has asked you about what Ultratec was concerned
>      about when you communicated with the FCC, I am going to ask you
>      exactly what did Mr. Engelke say to you about Ultratec's concern
>      about the use of the word "all"?

Simply reading this question exposes its premise as non sequitur.  Even so, Ultratec's

attorney, after objecting on privilege grounds, allowed questioning constrained "to the very narrow

question about the concern."  As the questioning continued, Ultratec objected again, claiming that

its own questions to Strauss had been limited to Strauss's communications with Chandler (at the

FCC) and did not open the door this far.  Strauss answered one more question about the nature of

Ultratec's concern before Ultratec's attorney directed Strauss not to answer.

If we back up a bit in the transcript (hopscotching through dkt. 70 at 88-98), it is evident

that defendants were keenly interested in learning Strauss's privileged conversations with  Engelke:

> Q:   And where did you get your understanding as to what Ultratec's
>      understanding was?
>
> A:   From Ultratec.
>
> Q:   And that would be Mr. Engelke?
>
> A:   Yes.
>
> Q:   So Mr. Engelke called you up after this press release–I am not going
>      to ask you what he said to you–but sometime after this press release
>      Mr. Engelke called you up to discuss this issue?
>
> A:   I don't remember the order. . . .

* * *

Q:  Did Mr. Engelke tell you why the change mattered?

Benkers: Objection, to the extend it calls for privileged information.  Instruct you not to answer.

Q:  I'm not asking what he told you.  I am asking you whether he told you why it mattered.

Strauss: Objection.

A.  I think that is privileged information.

* * *

Q:  What does that conditional approval mean from Ultratec's perspective as of the time this order was issued?

Strauss: Objection to the extent it calls for privileged information.

Benkers: Joined.

Q:  What did you understand conditional approval to mean?

A:  I can only speak to the November 27th ex parte letter.  I was not at the FCC at the time.  So I do not know what the FCC meant by conditioning its approval.

* * *

Q:  Do you have any record of discussing Chairman Martin's separate statement with Mr. Engelke on or around the time that Exhibit No. 17 issued?

Strauss: Objection to the extent it calls for privileged information.

Q:  No, the only question is whether you have a record of it.  I don't want you to tell me–I mean I do want you to tell me what is in it.  But I am not going to ask you to tell me what is in it.

A.  I don't know.

These questions, answers and objections provide context that corroborates what is sufficiently clear to the court just from its review of lynchpin questions and answers set out at pp. 2-3 of this order: Ultratec did not open the door.  Ultratec did not waive the privilege.  Ultratec's attorney asked

4

Strauss to explain what Ultratec was attempting to convey to Chandler and the FCC. Ultratec's attorney did not ask Straus to reveal what Engelke or anyone else at Ultratec had said to her on this issue. Deposition questions clarifying what a company was trying to say to a regulatory agency do not waive the attorney-client privilege as to what that company's executives said to their lawyer in confidence on that same point. The only arguable mistake that Ultratec made was that its attorney did not accompany more of her objections with directions to Strauss not to answer defendants' intrusive questions.

Defendants emphasized in their brief and during the July 23, 2014 telephonic motion hearing that they view the withheld information as critical to some of their equitable claims. Duly noted, but irrelevant. The strength of a party's perceived need to see privileged information does nothing to overcome the privilege. It verges on tautological to observe that most litigants would be keenly interested in and likely would benefit from learning what their opponent told counsel in confidence, which is why, in an adversarial system, these communications are privileged in first place. Defendants cannot bootstrap a waiver out of their own questions asking what Engelke said to Strauss and they cannot MacGyver a waiver out of opposing counsel's questions asking what Strauss said to Chandler or anyone else at the FCC. In sum, the documents docketed as 297-1 through 297-38 are protected by the attorney-client privilege and the client did not waive the privilege. Defendants' motion to compel disclosure of these documents will be denied.

## Work-Product Privilege

This leaves three documents prepared by Attorney Strauss (dkts. 297-39 through 297-41) for which plaintiffs are claiming the work-product privilege. At her deposition, Attorney Strauss reported that she had reviewed "a few of her notes" to prepare, but that she hadn't brought any of

her notes with her.  Pursuant to F.R. Ev. 612(a)(2), because Strauss did not use the notes during the hearing, the court has discretion to determine whether justice requires production of these notes. In other words, even if the notes do not qualify for the work product privilege (or the attorney client privilege), defendants are not necessarily entitled to their disclosure.

Having read the three withheld documents, the court's conclusion is that none of them qualify for the claimed attorney work-product privilege, none of them contains privileged attorney-client communications, and none of them is going to provide defendants with anything useful.  It is not at all clear that the work product privilege would apply to these notes no matter what they said; perhaps more to the point, the notes are for the most part off-point and prosaic; definitely more to the point Strauss's deposition is over and nothing in Strauss's documents suggest to the court that it should allow defendants to reopen it.  Exhibit 39 is a set of handwritten notes that appears to be completely irrelevant to defendants' equitable claims and arguments with the exception of six lines in which Strauss notes something she said to Chandler that is consistent with her deposition testimony.  Exhibit 40 is another set of handwritten notes of a meeting that briefly synopsizes some of the comments of the attendees.  There is brief mention of licensing that appears to be either a talking point or a listening point, but these notes don't appear to capture or reflect Strauss's legal analyses or thought processes.  Exhibit 41 appears to be Strauss's prepared talking points for the same meeting; the text looks as if it were prepared for delivery to the attendees.  Nothing about a document of this nature suggests that it should be privileged.

Perhaps this is a situation where the court could find that justice does not require production of the notes under the no harm-no foul rule.  But sunshine is the default policy for discovery in this court, and there is no compelling reason to keep these documents under seal. In a case as contentious as this one, perhaps this disclosure is will agitate the defendants into filing additional motions.  From

6

the court's perspective, given how close we are to the discovery cutoff and the firm trial date, that would be ill-advised, but this possibility is not a reason to keep these documents under seal.  As is the court's practice, I will delay production of these documents for one week in case plaintiffs see an urgent need for reconsideration.

ORDER

It is ORDERED that:

(1) Defendants' motion to compel disclosure of the specified documents for which plaintiffs are claiming work product privilege for Attorney Strauss is GRANTED.  Plaintiffs must produce these documents not later than August 7. 2014; and

(2) Defendants' motion to compel disclosure of the specified documents for which plaintiffs are claiming attorney-client privilege is DENIED.

Entered this 31st day of July, 2014.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge

7