IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ULTRATEC, INC. and CAPTEL, INC.,

                 Plaintiffs,

       v.

SORENSON COMMUNICATIONS, INC.
and CAPTIONCALL, LLC,

             Defendants.

OPINION AND ORDER

13-cv-346-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This civil action involving claims of patent infringement and counterclaims of invalidity is scheduled for trial beginning on October 14, 2014.  This order addresses defendants' motion for claim construction, dkt. #478; plaintiffs' motions in limine nos. 1-11, 13 and 18-19; all four of defendants' Daubert motions, dkt. ##411, 413, 441 and 456; and defendants' motions in limine nos. 1-2, 6 and 11.  Defendants' motion no. 9 will be addressed in a separate order with defendants' motion to correct apparent errors in the summary judgment order, dkt. #535.  The remaining motions in limine (plaintiffs' motions nos. 12, 14, 15, 16 and 17 and defendants' motions nos. 3, 4, 5 and 10) relate to the issues of induced infringement, willfulness and damages and will be addressed in separate orders.

1

OPINION

## I. DEFENDANTS' MOTION FOR CLAIM CONSTRUCTION, dkt. #478

Defendants have moved for claim construction of the term "captioned telephone display device" in claim 1 of the '346 patent, arguing that construction is necessary to determine infringement. Dkt. #478. Plaintiffs raised construction of this term with respect to both the '346 and '835 patents in their brief in support of their motion for partial summary judgment. Dkt. #121 at 38-41 and 47-51. See also dkt. #148 at 30-35 (defendants' response); dkt. #192 at 27-34 (plaintiffs' reply). Because plaintiffs withdrew their motion with respect to the '835 patent and neither infringement nor validity of the '346 patent was before the court on summary judgment, it was unnecessary to construe this term at that time.

Asserted claim 1 of the '346 patent reads:

1. A method of operating a relay system using a call assistant to facilitate communication between a hearing user and an assisted user by telephone, the hearing user speaking words in voice, the method comprising the steps of

transmitting the voice of the hearing user when speaking to the ear of the call assistant;

the call assistant speaking in voice the same words that the call assistant hears spoken by the hearing user into a microphone connected to a digital computer;

the digital computer using voice recognition computer software trained to the voice of the call assistant to translate the words of the voice spoken by the call assistant into a digital text message stream containing the words spoken by the call assistant;

transmitting both the digital text message stream and the voice of the hearing user by telephone connection to the assisted user;

2

> displaying the digital text message stream to a captioned telephone display device within sight of the assisted person; and

> transmitting the voice of the hearing user to the assisted user.

Defendants have asked the court to construe "captioned telephone display device" to mean "a device configured to be connected to a conventional telephone that filters out and displays text signals sent with a voice signal and passes the filtered voice signal to the conventional telephone." Plaintiffs argue that the term should be given its plain and ordinary meaning or in the alternative, be defined as "a telephone device that is connected to convey both a voice communication and a text transcription of the voice communication to the user."

Defendants contend that the '346 patent discloses only a "stand-alone display device that receives and displays captions and then passes the voice signal to a connected telephone." Dkt. #478 at 2. According to defendants, the claim does not disclose a single, integrated device having both the caption telephone display and conventional telephone functionality. Id. As plaintiffs pointed out in their summary judgment briefing, however, the claim does not require a connection to a conventional telephone or the filtering of text signals. The claim language requires only that voice and text be transmitted to the assisted user over a telephone connection (which I have not limited to a physical land line), the text be displayed to the device within sight of the assisted user and the voice of the hearing user be transmitted to the assisted user. Although defendants cite language from the specification discussing an embodiment using a conventional telephone to transmit the hearing user's voice to the assisted user, nothing in the patent claim or specification says that this *must* be the case or that the device cannot perform that function in addition to displaying the text.

'346 patent, col. 8, ln. 63 to col. 9, ln. 3.  Similarly, defendants cite a single-telephone-line embodiment in which filtering occurs.  Although the cited specification language expressly states that "appropriate filtering" is important, it does so only in reference to one particular embodiment.  '346 patent, col. 8, lns. 4-13.  Nothing in claim 1 requires filtering.

Accordingly, I find that the term "captioned telephone display device" is not limited to a device that is connected to or integrated with a conventional telephone or that filters out text signals.  I decline to adopt plaintiffs' alternative construction because it adds no clarity to the plain and ordinary meaning of the term.  As a final matter, I note that this construction is not inconsistent with my previous construction of the preamble to claim 1 of the '082 patent.  In the summary judgment order, I found that the preamble in that patent did not require the "captioned telephone device" itself to convey both the voice of the hearing user and text to the assisted user.  Although the terms "captioned telephone device" and "captioned telephone display device" may be analogous, they are used differently in the '082 and '346 patents and the parties' dispute addressed separate issues.  In any event, it appears that both patents disclose a device that can be either a single, stand-alone unit or a unit used in conjunction with a conventional telephone.

## II.  PLAINTIFFS' MOTIONS IN LIMINE

### A.  <u>Plaintiffs' Motion in Limine No. 1 to Exclude the Yamamoto Reference, dkt. #418</u>

Plaintiffs ask the court to exclude the "Yamamoto reference," a paper presented at a conference in Japan in March 1996 that plaintiffs believe defendants will rely on to argue

invalidity.  The parties argue over whether the reference qualifies as a "printed publication" under 35 U.S.C. § 102.  "In order to qualify as a printed publication within the meaning of § 102, a reference 'must have been sufficiently accessible to the public interested in the art.'" In re Lister, 583 F.3d 1307, 1311 (Fed. Cir. 2009) (quoting In re Cronyn, 890 F.2d 1158, 1160 (Fed. Cir. 1989)).  "A reference is publicly accessible 'upon a satisfactory showing that such document has been disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence, can locate it.'" Kyocera Wireless Corp. v. International Trade Commission, 545 F.3d 1340, 1350 (Fed. Cir. 2008) (quoting SRI International, Inc. v. Internet Security Systems Inc., 511 F.3d 1186, 1194 (Fed. Cir. 2008)).

The Yamamoto reference was presented at the Acoustical Society of Japan conference attended by 100 to 150 individuals; the paper was published in a book of all the conference papers that was available to the conference attendees; and after the conference the paper was submitted to the Japan Science and Technology Agency where it was available for review by the public.  Neither side says whether the Japan Science and Technology Agency marketed, distributed or indexed the paper, so I must assume that it did not.  When references are not distributed to the public or indexed for searching by the public, the court

> must consider several factors relevant to the facts of [the] case before determining whether or not [the publication] was sufficiently publicly accessible in order to be considered a "printed publication" under § 102(b). . . .  The factors relevant to the facts of this case are:  the length of time the display was exhibited, the expertise of the target audience, the existence (or lack thereof) of reasonable expectations that the material displayed would not

be copied, and the simplicity or ease with which the material displayed could
have been copied.

In re Klopfenstein, 380 F.3d 1345, 1350 (Fed. Cir. 2004).

In this case, the Yamamoto paper has been available since May 1, 1996 until the
present, so it was "on display" for more than a year before the filing date for the earliest
patent in suit, September 8, 1997, which is significantly longer than the reference in In re
Klopfenstein, 380 F.3d at 1350, which was displayed for three days at a conference.  The
target audience, like the one in Klopfenstein, was experts (Acoustical Society members) who
are likely to have ordinary skill in the art and who are more likely to retain information on
the subject matter.  Neither side suggests there were any expectations of confidentiality, but
the conference book was not free, so I can infer that there was some expectation that the
conference book would not be copied for free distribution.  However, this factor is most
important when the display is temporary, rather than enduring as is the case for the
Yamamoto reference.  Id. at 1351 ("Where parties have taken steps to prevent the public
from copying *temporarily* posted information, the opportunity for others to appropriate that
information and assure its widespread public accessibility is reduced.") (Emphasis added).
Similarly, the ease with which something may be copied is less important if the publication
may be purchased because then retention by memory is less critical.  Id. ("The simpler a
display is, the more likely members of the public could learn it by rote or take notes
adequate enough for later reproduction.").  The Yamamoto reference was available for
purchase at and after the conference and available for review after the conference, May 1996
and onward.  Massachusetts Institute of Technology v. AB Fortia, 774 F.2d 1104, 1109

(Fed. Cir. 1985) (concluding that prior art was "printed publication" when "between 50 and 500 persons interested and of ordinary skill in the subject matter were actually told of the existence of the paper and informed of its contents by the oral presentation, and the document itself was actually disseminated without restriction to at least six persons"). Therefore, I conclude that the Yamamoto reference is a "printed publication" under 35 U.S.C. § 102 and may be considered by the jury for the purpose of determining invalidity.


B.  Plaintiffs' Motion in Limine No. 2 to Preclude Any Defense Witnesses
Not Properly Disclosed under Rule 26, dkt. #420

Plaintiffs point out that defendants failed to disclose any employees as expert witnesses in accordance with Fed. R. Civ. P. 26 and ask that the court not allow any witnesses to testify who have not been disclosed properly under Rule 26.  Because plaintiffs have not identified any specific witnesses to whom they object and defendants confirm that they will not be calling any undisclosed witnesses at trial, plaintiffs' motion in limine no. 2 will be denied as unnecessary.


C.  Plaintiffs' Motion in Limine No. 3 to Exclude Evidence or Argument on Workload or
Disparagement of U.S. Patent and Trademark Office, dkt. #422

The parties agree that generalized, negative remarks about the patent office would be inappropriate, as well as irrelevant.  Evidence or arguments to the effect that the patent office has particular experience and skill in considering patents would be equally inappropriate.  This ruling does not prohibit defendants from adducing evidence that a

particular prior art reference was not before the patent office when it reviewed plaintiffs' applications for patents or that a patent has obvious errors.

D. <u>Plaintiffs' Motion in Limine No. 4 to Exclude Evidence Related to Quarles &
Brady LLP's Prosecution of Patents in Suit, dkt. #424</u>

Plaintiffs want the court to bar defendants from telling the jury that Quarles & Brady LLP prosecuted the patents at issue in this lawsuit.  It is not clear what the purpose of such a ruling might be.  After all, the patents show that the firm prosecuted them. However, defendants have failed to make it clear what relevance there might be in identifying the firm, although they oppose the motion vigorously.  They do confirm that they do not intend to argue inequitable conduct, so that is not an issue.

I will not rule on the motion at this time.  If at trial either side believes it needs a ruling on a particular witness or a particular line of questioning, it can request one from the court.

E. <u>Plaintiffs' Motion in Limine No. 5 to Preclude Evidence or Argument Concerning
Injunctive Relief, Treble Damages, and Attorney's Fees, dkt. #426</u>

Plaintiffs ask the court to exclude evidence "advising the jury of Plaintiffs' requests for an injunction, treble damages, and attorneys' fees."  Plts.' Br., dkt. #427, at 1. Defendants agree that they will not submit evidence in front of the jury that refers to plaintiffs' requests for injunctive relief, treble damages or attorneys' fees, but they point out that some evidence may be relevant to other issues in the trial that pertain to these requests.

8

Defendants do not explain what those might be, but I agree that to the extent such evidence exists, its admissibility must be determined on a case-by-case basis at trial. To the extent evidence is submitted purely for the purpose of disclosing plaintiffs' requests for injunctive relief, treble damages and attorneys' fees, it must be excluded.

F.   Plaintiffs' Motion in Limine No. 6 to Preclude Evidence or Argument Concerning
Plaintiffs' Duty of Candor or Any Claim of Equitable Conduct, dkt. #428

Plaintiffs ask the court to exclude evidence related to their duty of candor and any allegations of inequitable conduct before the Patent and Trademark Office because defendants have not asserted any claims or defenses related to this issue and the evidence would unduly prejudice plaintiffs. Defendants contend that they intend to introduce such evidence for the purpose of arguing that certain prior art was not before the Patent Office when plaintiffs' patents were prosecuted. Introduction of the evidence for that purpose is permissible because it bears on the validity of the patent. Accordingly, I am granting plaintiffs' motion but will allow defendants to introduce evidence related to what prior art was or was not before the patent office.

G.   Plaintiffs' Motion in Limine No. 7 to Limit the Prior Art Defendants
May Assert at Trial, dkt. #435

Plaintiffs have asked the court to limit defendants to asserting no more than three invalidating prior art references for each asserted patent and to identify the specific obviousness combinations that they intend to pursue at trial. They point out that

defendants have identified 63 references in their 35 U.S.C. § 282 notice, many of which were not included in Occhiogrosso's expert report on invalidity.  The request is rendered moot in part by the fact that defendants have disclosed in their proposed jury instructions a total of 13 references on which they intend to rely at trial, nine of which will be asserted against the '482 and '314 patents.  For the sake of efficiency and fairness, I will require defendants to identify any possible obviousness contentions that they have not identified previously to plaintiffs.  Defendants shall provide that list within three days of the date of this order.   To the extent that plaintiffs are asking that defendants pare down the combination of references to be used for obviousness or identify exactly which combinations they will rely on at trial, that request will be denied.


### H.  Plaintiffs' Motion in Limine No. 8 to Exclude Declaration of Conan Gregar, dkt. #437

Plaintiffs ask the court to exclude the declaration of Conan Gregar, a finance manager for Intel Corporation, because it does not show that Gregar has personal knowledge of several facts concerning the public availability of certain Intel products.  Dkt. #337, exh. A. However, in a stipulation dated August 18, 2014, the parties agreed to the following:

> The parties agree that the declaration from Intel Corporation attached as Exhibit A will be treated the same as sworn U.S. deposition testimony in the Western District of Wisconsin Case Nos. 13-cv-346 and 14-cv-66. Plaintiffs specifically reserve all other objections to the testimony contained within Exhibit A. The use and admissibility of Exhibit A in any other proceedings will be governed by the rules in effect with respect to such other proceeding, and the parties reserve any and all objections to the same.

10

Dkt. #337.  Defendants argue that they subpoened Intel Corporation pursuant to Rule 30(b)(6), dkt. #492, exh. 6, and that as the corporation's designated witness, Gregar could testify to "matters known or reasonably available" to the organization.  PPM Finance, Inc. v. Norandal USA, Inc., 392 F.3d 889, 894-95 (7th Cir. 2004) (Rule 30(b)(6) witness authorized to testify to matters within his personal knowledge and matters known or reasonably available to organization).  A district court in this circuit has noted that "[w]hen it comes to using Rule 30(b)(6) depositions at trial, strictly imposing the personal knowledge requirement would only recreate the problems that Rule 30(b)(6) was created to solve." Sara Lee Corp. v. Kraft Foods Inc., 276 F.R.D. 500, 503 (N.D. Ill. 2011).

I agree with defendants that the stipulation makes clear that Gregar's declaration would substitute for his testimony as Intel's designee under Rule 30(b)(6).  Although plaintiffs reserved "other" objections to the testimony, they agreed to accept Gregar as a Rule 30(b)(6) witness, meaning they agreed that Gregar could speak on matters reasonably available to the corporation.  The dates on which Intel made certain products publicly available and the publication date of one of its product handbooks are matters known by Intel or reasonably available to it.  Accordingly, plaintiffs' motion will be denied.

I.  Plaintiffs' Motion in Limine No. 9 to Exclude Evidence Contradicting this Court's Summary Judgment Rulings, dkt. #439

Plaintiffs ask the court to exclude evidence that conflicts with this court's summary judgment opinion on defendants' contract counterclaim (dkt. #352).  Plaintiffs contend that the holdings from that opinion are

11

> (1) the purported contract between Ultratec and the Federal Communications Commission ("FCC") did not obligate Plaintiffs to license their patents to Defendants; (2) that Defendants were not third party beneficiaries of the purported contract; (3) that Ultratec did not promise it would license its patents to the Defendants; (4) that Ultratec did not promise it would license its patents on a nondiscriminatory basis; and (5) that Defendants have no basis for contending they were misled or that their purported reliance was justified.

Plts.' Br., dkt. #440, at 1-2.  Defendants argue that plaintiffs' request is too broad and would exclude evidence that is relevant for other reasons.  Specifically, they say

> The FCC's declaratory ruling approving IP CTS for reimbursement from the TRS Fund is an excellent example of the type of evidence Plaintiffs would apparently seek to exclude for purposes other than proving breach of contract. That Declaratory Ruling and related evidence, including public FCC filings and interpretations of the Ruling, are indisputably relevant to live issues in the case including (but not limited to) the FCC's creation of the IP CTS market, product inception and development, secondary considerations, induced infringement, willfulness, damages (including non-infringing alternatives and relative competitive position of the parties), and various affirmative defenses.

Dfts.' Br., dkt. #493, at 2-3.  Both parties paint with too broad a brush, but I agree with plaintiffs to the extent that I see no reason why evidence about these issues would be relevant to issues that will be decided by the *jury*, especially given that any issues relating to injunctive relief will be tried to the court outside the presence of the jury.  I will not allow defendants to submit this evidence unless they can show it is submitted for a relevant reason other than contradicting this court's ruling and is otherwise admissible.

J.   Plaintiffs' Motion in Limine No. 10 to Preclude Technical Publications on Which Occhiogrosso Did Not Rely in his Expert Report, dkt. #442

Plaintiffs seek to prevent defendants from introducing as evidence at trial more than 30 technical references related to enablement of certain prior art references.  Dkt. #443, exh.

12

A (identifying documents). Although Occhiogrosso identified eight of the publications in the appendix to his expert report on invalidity, he did not expressly rely on any of the publications in his expert report. Plaintiffs seek both to prevent Occhiogrosso from testifying about the contents of the documents and to prevent defendants from introducing the publications into evidence.

As explained in the section addressing whether Occhiogrosso will be permitted to testify about enablement (plaintiffs' motion in limine no. 19), Occhiogrosso may discuss the eight references he identified in his report, so long as they meet the conditions set forth below. With respect to the other reports, plaintiffs argue that they are (1) impermissible expert testimony under Fed. R. Evid. 702 because defendants failed to name the authors as expert witnesses; (2) inadmissible hearsay under Rules 801 and 802; and (3) unfairly prejudicial and misleading under Rules 403 and 703.

Defendants assert, correctly, that any publication dated October 1994 or before would be subject to the hearsay exception for ancient documents under Rule 803(16) (hearsay exception for statement in authenticated document that is at least 20 years old). I note, however, that certain conditions apply. First, if these publications contain more than one level of hearsay, an appropriate exception must be found for each level of hearsay. United States v. Bronislaw Hajda, 135 F.3d 439, 444 (7th Cir. 1998); Rule 805 (no hearsay within hearsay). Second, the author of the publication must have personal knowledge of the statement that is to be admitted. Columbia First Bank, FSB v. United States, 58 Fed. Cl. 333, 337-38 (2003) (citing advisory committee note to Fed. R. Evid. 803 and Fed. R. Evid.

602); 5 Jack B. Weinstein & Margaret A. Berger, <u>Weinstein's Federal Evidence</u> § 803.18 (2014 ed.).  Third, if at the time the publication was written, a motive for misrepresentation already existed, the document may be excluded under Rule 403 as unfairly prejudicial.  5 <u>Weinstein's Federal Evidence</u> § 803.18.

Defendants also argue that because these publications have "independent legal significance" as enabling references, they are not being offered for the truth of the matter asserted.  <u>Bristol-Myers Squibb Co. v. Ben Venue Laboratories, Inc.</u>, 246 F.3d 1368, 1379 (Fed. Cir. 2001) (enablement of an anticipatory reference may be demonstrated by a later reference); Rule 803(c) (statements not hearsay if not offered for truth of matter asserted). A few district courts have held that prior art references offered as printed publications under 35 U.S.C. § 102(a) or (b) are not hearsay because they are not offered to prove the truth of any statements within the reference.  7 Annotated Patent Digest § 44:96 (citing <u>Freeman v. Minnesota Mining and Manufacturing Co.</u>, 675 F. Supp. 877, 884 n.5 (D. Del. 1987); <u>Joy Technologies, Inc. v. Manbeck</u>, 751 F. Supp. 225, 233 n.2 (D.D.C. 1990), <u>judgment aff'd</u>, 959 F.2d 226, 22 U.S.P.Q.2d 1153 (Fed. Cir. 1992)).  These courts reason that the publications were offered to show only that the claimed subject matter was in the public's possession and not that the actual description of the invention was true.  The same reasoning would apply in this case.  <u>Bristol-Myers Squibb</u>, 246 F.3d at 1379 (noting that court has looked to enabling references "only to show that the claimed subject matter . . . was in the public's possession").  For similar reasons, these publications are not necessarily expert opinions, as plaintiffs suggest.  Although some of the publications may contain opinion

14

evidence, they are not necessarily "expert opinions" merely because they contain technical or scientific information, as plaintiffs suggest. For example, the publications may contain factual information showing what products or features were available in the mid-1990s.

In sum, I will not exclude the enabling references as a general matter. If defendants are able to show that the particular statements that they intend to introduce at trial meet an exception to the hearsay rule, the statement may be admitted if introduced through a proper witness.

K. <u>Plaintiffs' Motion in Limine No. 11, to Preclude Evidence or Argument Regarding Alleged Copying by Plaintiffs, dkt. #446</u>

In an order dated August 28, 2014, dkt. #350, deciding plaintiffs' partial motion for summary judgment, I concluded that defendants' '801 patent was invalid as obvious. Now plaintiffs have moved to bar defendants from introducing any evidence or arguing that plaintiffs copied the features of the '801 patent on the ground that the issue is irrelevant in light of the dismissal of the claims under the '801 patent. Dkt. #447. I will grant the motion.

In the August 28 order, I concluded that defendants had not adduced any evidence of copying by plaintiffs, but plaintiffs do not point to that as a reason for excluding the evidence. Further, defendants point to new evidence of alleged copying in their response brief, so I will assume for the purpose of resolving this motion that defendants have admissible evidence that plaintiffs copied features included in the '801 patent. However,

even with the benefit of that assumption, defendants have not shown that allegations about copying the '801 patent are relevant.

All of defendants' arguments relate to rebutting evidence that they anticipate plaintiffs will offer at trial. First, defendants say that plaintiffs intend to rely on the commercial success of their own patented products as evidence that their patents are not obvious. If so, defendants argue, plaintiffs' alleged copying of features disclosed in the '801 patent is evidence that any commercial success was related to the copied features rather than the inventive features of plaintiffs' patents. The inference defendants seem to be drawing is that, if plaintiffs believed that the unpatented features were worth copying, it follows that plaintiffs' sales increased at least in part because of those patented features. However, defendants do not develop an argument or cite any authority in support of a view that it is reasonable to an infer from the act of copying itself that the copied features rather than other new features caused an increase in sales. Of course, defendants are free to point to any admissible evidence that nonpatented features led to any commercial success, but that does require defendants to allege that plaintiffs copied those nonpatented features from defendants.

Defendants cite <u>Apple, Inc. v. Samsung Electronics Co.</u>, 678 F.3d 1314, 1327 (Fed. Cir. 2012), in which the court affirmed a decision denying injunctive relief on the ground that the plaintiff "failed to show that it would likely be irreparably harmed by the infringement because it failed to demonstrate that consumer purchasing decisions were based on the presence of the [patented] feature." In asking for the injunction, the plaintiff argued

that the defendants' "employees themselves believed that [they] needed the [patented] feature to compete with" the plaintiff.  Id.  The court stated that "the evidence that [the defendants'] employees believed it to be important to incorporate the patented feature into [the defendant's] products is certainly relevant to the issue of nexus between the patent and market harm, [but] it is not dispositive. That is because the relevant inquiry focuses on the objective reasons as to why the patentee lost sales, not on the infringer's subjective beliefs as to why it gained them (or would be likely to gain them)."  Id. at 1327-28.  Defendants rely on the court's statement that a party's belief about the importance of a feature is "relevant to the issue of nexus between the patent and market harm."

Apple provides little guidance.  For one thing, it involved a ruling on injunctive relief rather than evidence of obviousness.  This is important because an injunction necessarily requires some speculation about *future* sales.  The court said nothing about using a party's belief about the importance of a feature as evidence of the reason for sales that already have occurred.  More important, Apple had nothing to do with copying, but rather addressed the extent to which a party's subjective beliefs about the importance of a feature could be relevant to showing the relationship between sales and that feature.  Because plaintiffs did not file a motion in limine about the potential relevance of their subjective beliefs, I need not resolve the more general question whether defendants could use those beliefs (rather than the specific act of copying) to rebut plaintiffs' evidence regarding the reasons for the commercial success of their patented products.

17

Defendants' second argument is more difficult to follow, but it seems to be that evidence that plaintiffs copied defendants' products is evidence that defendants did not copy plaintiffs' products. This argument is not persuasive because the two are not mutually exclusive. Even if plaintiffs were copying some of the nonpatented features of defendants' products, the copying sheds no light on whether defendants were copying other, patented features of plaintiffs' products.

Defendants are concerned that plaintiffs will point to the similarity of the unpatented features as evidence that defendants copied plaintiffs' patented features, but that concern is unfounded. To the extent that plaintiffs are permitted to offer evidence of any copying by defendants, I see no reason at this point why that evidence would extend beyond the patented features of plaintiffs' products.

Third, defendants say that plaintiffs' alleged copying is relevant to a determination of a reasonable royalty in the event that the jury finds that defendants are liable. Defendants are correct that plaintiffs are not entitled to a royalty for unpatented features, but that is true regardless whether plaintiffs copied those features, so any alleged copying is not relevant to a royalty rate. Defendants do not need to put in evidence of alleged copying to argue that unpatented features should not be part of the royalty.

Finally, I note that it would be prejudicial to allow allegations of copying against plaintiffs related to a patent that has been dismissed from the case. Thus, even if defendants' evidence of copying had some marginal probative value, I would exclude the

evidence under Fed. R. Evid. 403 because the probative value would be substantially outweighed by the danger of unfair prejudice.

L.   Plaintiffs' Motion in Limine No. 13 to Preclude Dr. Gregg C. Vanderheiden from Offering Any Expert Testimony, dkt. #453

Plaintiffs ask the court to preclude Gregg C. Vanderheiden from testifying as an expert because defendants did not designate him as an expert or produce an expert report for him and because Vanderheiden has testified that he has not read plaintiffs' patents. Defendants argue that Vanderheiden should be allowed to testify as a fact witness, specifically so that he may explain the contents of the memorandum he drafted for the FCC, which the FCC published.  In the memorandum, Vanderheiden states that, in his opinion, there are noninfringing alternatives to plaintiffs' patents that fit the definition of the technology approved for FCC funding.  Defendants argue that they should be able to call Vanderheiden so that he can establish whether what he wrote in the memorandum was truthful and to show defendants' state of mind because they say they relied on this memorandum when deciding to enter into the marketplace.  Defendants' state of mind is relevant to plaintiff's arguments on willful blindness and willfulness.

Defendants argue that the memorandum may be introduced into evidence for the purpose of establishing the existence of noninfringing alternatives because, they argue, the memorandum is a statement by a party opponent.  Defendants say that plaintiffs adopted the memorandum under Fed. R. Evid. 801(d)(2) by "tacitly approving" Vanderheiden's final draft after plaintiffs and Vanderheiden exchanged drafts and discussions on the subject.

19

Defendants do not say what words plaintiffs used that make defendants believe that plaintiffs "approved" Vanderheiden's memorandum. The mere fact that Vanderheiden sent plaintiffs drafts of the memorandum and both parties discussed its contents does not suggest that plaintiffs "manifested that [they] adopted or believed [the statement] to be true." Defendants cannot transform Vanderheiden's expert opinion into fact testimony by asserting simply that plaintiffs discussed his opinion with him. Therefore, Vanderheiden will not be permitted to testify as to the truth of the opinions in his memorandum.

However, defendants' reliance on those opinions is evidence of their state of mind at the time they entered the marketplace with their allegedly infringing products. Accordingly, Vanderheiden's testimony and memorandum are admissible, with a curative instruction explaining the limited purpose of the evidence. The parties should submit proposed curative instructions on this issue to the court prior to the final pretrial conference scheduled for October 2, 2014.

M.  <u>Plaintiffs' Motion in Limine No. 18 to Preclude Arguments that Conflict with Court's Summary Judgment Rulings or Were Previously Undisclosed, dkt. #471</u>

Plaintiffs have asked the court to limit defendants' non-infringement arguments to those that are contained in Occhiogrosso's expert report and still viable after the court's ruling on summary judgment. This request is overly broad and vague. Without knowing exactly what evidence defendants intend to introduce at trial, it would be impossible to give a definitive ruling on plaintiffs' motion at this time. However, it is possible to rule that neither party will be allowed to introduce improperly disclosed expert opinions or to argue

or present evidence on the existence of claim elements that are inconsistent with the court's claim constructions.

A review of plaintiffs' arguments suggests that they have a few specific concerns to which defendants have responded. Therefore I will address those issues that have been properly developed by the parties.

Plaintiffs' first concern relates to whether defendants' expert, Benedict Occhiogrosso, improperly supplemented his expert report. In an order dated July 17, 2014, I gave defendants limited permission to have Occhiogrosso supplement his report in response to Ludwick's discussion of the modem (or its substantial equivalent) allegedly present in defendants' service. Dkt. #286. Plaintiffs contend that Occhiogrosso took advantage of this opportunity to add new opinions on the following issues: the level of skill in the art and his relevant qualifications, dkt. #300 at ¶¶ 4-11 and 28; claim construction, id. at ¶ 34; rebuttal to Ludwick's equivalency arguments on the terms "telephone line" and "telephone system," id. at ¶¶ 52-58; and a rebuttal to the declaration of Kevin Colwell, dkt. #184, relating to telephone and internet protocol connections in CapTel service, Id. at ¶¶ 66-69. Defendants say that even though Occhiogrosso added opinions to his supplemental report in addition to what the court specifically authorized in its July order, he was allowed to do so because defendants filed the supplemental report three weeks before his August 20, 2014 deposition on non-infringement and because the supplemental opinions addressed matters raised in his initial report.

Occhiogrosso's supplementation with respect to his qualifications and the level of skill in the art is addressed in the discussion of plaintiffs' motion no. 19.   Occhiogrosso's discussion of the telephone terms in his supplemental report appears to relate only to whether "telephone system" in the '314 patent includes internet protocol technologies, a matter he discussed at length in his original report on non-infringement, dkt. #135 at p. 19-24, § VIII.B.  Although this topic may be a proper subject for supplementation, I agree with plaintiffs that these opinions are unnecessary and irrelevant because I have concluded that the use of the word "telephone" in the '482 and '314 patents does not exclude internet protocol connections.   Occhiogrosso's supplemental discussion of Colwell's declaration, which plaintiffs submitted for the first time on summary judgment, is improper because it specifically rebuts Colwell's opinion, which was not the subject of Occhiogrosso's initial report.  Although the general subject matter may relate to issues raised in Occhiogrosso's initial report and to Ludwick's opinions for which the court allowed Occhiogrosso to provide supplementation (the presence of modems or their equivalents in CaptionCall call centers), paragraphs 66 through 69 of Occhiogrosso's supplemental report specifically address Colwell's arguments for the first time and therefore are improper.

Plaintiffs' concern with respect to the summary judgment ruling is that defendants will attempt to make additional claim construction arguments related to terms that the court already construed but that also appear in asserted claims that were not before the court on summary judgment.  They argue that because Occhiogrosso did not testify previously that the same term appearing in multiple patents should be construed differently, defendants

cannot now change course and attempt to argue new constructions of the same terms disclosed in claims that were not before the court on summary judgment.  Defendants deny that they intend to do this but point out that the court did not construe the term "telecommunication device for the deaf" in claim 1 of the '314 patent and that there may be additional disputes concerning the term "modem."  The court has not construed the term "telecommunication device for the deaf" because the parties did not present any dispute with respect to this term when they had the opportunity to do so.  Therefore, any arguments made with respect to that term will not be inconsistent with the court's ruling on claims construction.  With respect to "modem," defendants state that Occhiogrosso should be allowed to testify that the accused technology in the CaptionCall call center does not modulate a signal as a modem requires and is not "connected" to the call assistant workstations as the '314 patent requires.  I agree that neither of these arguments conflicts with the court's finding that a "modem" need not convert a signal to audio tones.


### N.  Plaintiffs' Motion in Limine No. 19 to Preclude Certain Testimony from Benedict Occhiogrosso, dkt. #470 and Defendants' Motion to Exlude Argument and Testimony Analyzing Invalidity from Perspective of Limited Art, dkt. #441

These two motions can be addressed in one order because both are directed to plaintiffs' contention that defendants' expert witness, Benedict Occhiogrosso, is unqualified to testify as an expert witness.  (In the second motion, plaintiffs assert reasons in addition to his alleged lack of qualifications for barring his testimony; I will discuss those at the end of this section.)  Plaintiffs take the position that the person of ordinary skill in the art must

have specific experience with telecommunications relay services for the deaf and hard of hearing; defendants argue that such specialization is not necessary and that the person would meet the definition if he had ordinary skill in the art of "telecommunication systems and methods in which an intermediary facilitates voice to text transcription."

I am persuaded that defendants have the better of the argument, that the proper definition of a person of ordinary skill in the art would be a person with experience and skill in the technical art of telecommunications and voice-to-text transcription.  (Because I agree with plaintiffs that the phrase "methods in which an intermediary facilitates voice-to-text transcription" improperly adds features that I rejected on claims construction, I have used "voice-to-text transcription.")  "In determining the relevant art for purposes of addressing issues of patent validity, the court must look to the problem confronting the inventor." Bancorp Services, L.L.C. v. Hartford Life Insurance Co., 359 F.3d 1367, 1375 (Fed. Cir. 2004); see also Roberts v. Sears, Roebuck & Co., 723 F.2d 1324, 1334 (7th Cir. 1983) ("Pertinent art has been defined as the art to which one can reasonably be expected to look for a solution to a problem that the patented device attempts to solve.").  In this instance, the field of telecommunication is the one to which a person of ordinary skill in the art would look for methods of improving telecommunication for deaf and hard of hearing users and, in particular, voice-to-text transcription.

Defendants' proposed definition encompasses a person with experience and skill in the field of telecommunication services for the deaf and hard of hearing but is not limited to persons working only in that particular area.  It defines the art to which an inventor would

24

look to solve particular problems of telecommunication and voice to text transcription, whether the inventor is trying to solve a problem for a deaf or hard of hearing user, for a person looking for language interpretation services or for others seeking means of converting speech to text.

The definition is also supported by the patents in suit, many of which include a statement explaining that the inventions disclosed in them are not limited to problems of the deaf and hard of hearing, but may solve problems of the kind that arise in many areas of telecommunication as well as in voice-to-text transcription.  E.g., '314 and '482 patents ("The improvements to the relay system and method of operating the relay described herein are applicable to the broad TDD [telecommunication device for the deaf] community and to all the applications in which a relay is normally used," col. 3, lns. 16-20); '104 patent ("Relay voice to text service might also be useful for any application in which it is desired to supplement voice communications by a text transcription of the voice spoken on the telephone," col. 3, lns. 42-45 and "the "assisted user," described in patent "may be deaf or hard of hearing, but . . . may also be a normally hearing person who simply wants text assistance for some reason"); and '346 patent ("Relay voice to text service might also be useful for any application in which it is desired to supplement voice communications by a text transcription of the voice spoken on the telephone."  Col. 3, lns. 39-42).

Insofar as plaintiffs' assertions of Occhiogrosso's lack of qualifications relate to his alleged lack of experience with deaf and hard of hearing users, they need no further discussion in light of the determination that the relevant art is broader than plaintiffs'

proposed definition.   Insofar as plaintiffs contend that Occhiogrosso's training and experience are insufficient even under the proper definition, their contention has no basis. Occhiogrosso's initial and supplemental expert reports list his experience in a number of areas:  traditional relay systems, including a system in which an audio signal is routed first to interpreters who revoice what they hear in another language, after which the translated audio signal is routed to those in need of it; captioning systems for public meetings; the design and implementation of custom telecommunications systems, including routing and switching of voice and text over different combinations of telephone lines and IP connections; the implementation of medical transcription systems; the use of speech recognition and error correction techniques; the design of a system for transcribing voicemail messages; the application of speaker-dependent speech recognition to recorded voicemail messages; and voice digitization, using circuit, packet and hybrid integrated switching systems, including comparing cost, expandability, complexity, performance and reliability.

As mentioned earlier, plaintiffs object to Occhiogrosso's supplementation of his report to add more details about his experience in the relevant art, after the court had given defendants limited permission to supplement the report to discuss Ludwick's discussion of the modem.  However, Occhiogrosso's supplementation in respect to his prior experience and skill level merely adds detail to information he supplied in his initial expert reports on non-infringement, dkt. #135, invalidity, dkts. ##134 and 133, and infringement, dkt. #140. Plaintiffs had three weeks to review the new material before the August deposition, so I will allow it.  Occhiogrosso's experience supports a finding that he is a person of

ordinary skill in the relevant art, as I have defined it, and he will be allowed to testify as an expert.

Plaintiffs have two additional challenges to Occhiogrosso's testimony: they want him barred from testifying about enablement as it relates to the Ryan patent, which defendants contend is prior art, and they do not want him to testify about a figure that allegedly depicts the teachings of McLaughlin.  Plaintiffs point out, correctly, that Occhiogrosso did not say anything about enablement in his expert report on invalidity, dkt. #133, and that defendants gave no indication that they intended to submit an expert report on enablement. Instead, defendants waited until one business day before Occhiogrosso's May 8 and 9, 2014 deposition to serve plaintiffs the documents on which Occhiogrosso relied to reach an opinion about enablement.  Moreover, defendants never questioned Occhiogrosso on the issue until the second day of the deposition, but plaintiffs had an opportunity to cross examine him on those opinions at length during that second day of the deposition. Occhiogrosso Dep., dkt. #173, 296-324.

Defendants should have provided plaintiffs written materials from Occhiogrosso more than one day before his deposition.  However, in light of plaintiffs' opportunity to cross examine him at his deposition and question him about the late-produced documents, I will not bar him from testifying at trial about his beliefs that Ryan was enabled.  The fact that Occhiogrosso did not discuss the factors in In re Wands, 838 F.2d 731, 737 (Fed. Cir. 1988), at his deposition is not a reason to bar his testimony, particularly since his counterpart, plaintiffs' expert, Paul Ludwick did not do so either.

27

Plaintiffs also want Occhiogrosso barred from providing evidence or testimony about a figure that allegedly depicts the teaching of the McLaughlin patent because he did not submit a declaration including this figure until May 12, 2014.  This was three days after he had been deposed on May 8-9, and three months after he had submitted his expert report on invalidity.  As plaintiffs point out, Occhiogrosso never supplemented his report to include the figure.  Plaintiffs contend that this failure to produce "a complete statement of all opinions the witness will express and the basis and reasons for them" mandates exclusion under Fed. R. Civ. P. 26(a)(2)(B) and NutraSweet Co. v. X-L Engineering Co., 227 F.3d 776, 785-86 (7th Cir. 2000) (failure to file supplemental report hampered opposing party's ability to examine expert witness; sanction of exclusion was not abuse of discretion).

Defendants' view of the situation is much different.  They say that the "figure" is nothing more than a "single demonstrative figure of an opinion disclosed and discussed in Mr. Occhiogrosso's expert report," Dfts.' Opp. to Plts.' Mot. to Strike, dkt. #214 at 13, and that plaintiffs had a full opportunity to depose Occhiogrosso on the same opinion at his deposition on May 8-9.  Id. at 14-15.  Without having a copy of the figure, I cannot fully assess its significance, but unless it is something more than the kind of demonstrative figure a witness might scribble on a white board at trial to illustrate a concept, I will not strike it. If plaintiffs think it is, they can raise the issue at the final pretrial conference, so long as they have a copy of the figure for the court's review.

### III.  DEFENDANTS' MOTIONS IN LIMINE

#### A.  Defendants' Motion in Limine No. 1 to Exclude Reference to Defendants' Ownership Interests, dkt. #394

Defendants contend that the jury should not hear any evidence or argument regarding the private equity ownership of either defendant.  Plaintiffs seem to agree, arguing only that such evidence is relevant to whether defendants will be able to avoid satisfying a monetary judgment and the question of irreparable harm with respect to monetary relief.  Therefore, I will grant defendants' motion to the extent that plaintiffs may not make any reference to defendants' ownership interests to the jury.

#### B.  Defendants' Motion in Limine No. 2 to Exclude Reference to Defendants' Overall Revenues, Dkt. #395

Defendants ask that the court not allow the jury to hear any evidence or argument related to (1) defendants' overall revenues during the infringement phase of the trial and (2) defendant Sorenson's size, wealth, revenues and market share during the damages phase of trial.  Plaintiffs agree that Sorenson's *overall* revenues are not relevant during the liability phase of trial but argue that Sorenson's revenues related to the accused products and services and all of CaptionCall's revenues are relevant to plaintiffs' claim of induced infringement. Plaintiffs contend that the fact that defendants were able to establish a large revenue stream is circumstantial evidence of their motive to continue inducing infringement.

I find that any probative value defendants' revenue stream may have with respect to their intent to induce infringement is significantly outweighed by the potential prejudice that

it may have on the jury during the liability phase of trial.  The parties' remaining arguments relating to the damages phase of trial will be addressed in a separate order.

## C.   Defendants' Motion in Limine No. 6 to Exclude Evidence and Argument Related to Sorenson's Video Relay Services, dkt. #399

Defendants ask that the court not permit the jury to hear evidence or argument about any complaints or comments made by Kelby Brick (former chief of the Disability Rights Office) or the Federal Communications Commission with respect to defendant Sorenson's video relay services. Plaintiffs have made clear in their response brief that they consider such evidence and argument relevant only to their request for a permanent injunction.  Because any issues relating to injunctive relief will be tried to the court outside the presence of the jury, defendants' motion is moot.

## D.   Defendants' Motion No. 11 to Exclude Secondary Considerations of Honors and Awards, dkt. #404

This motion relates to secondary considerations of obviousness for the three features that plaintiffs allegedly claimed in their inventions:  revoicing, nearly simultaneous voice and text and two-line captioned telephone service.  Defendants seek to preclude testimony about any awards and honorary degrees given to plaintiffs or patent inventors Robert Engelke and Kevin Colwell because plaintiffs have not shown that there is any nexus between such evidence and the merits of the asserted claims.  Defendants mention only two awards by name and do not provide any further information:  Engelke's honorary degree from the

University of Wisconsin and Colwell's Andrew Saks Engineering Award.   Plaintiffs responded by providing information concerning the purpose and nature of the awards.   A review of these submissions indicates that the honorary degree and award are relevant both to establishing the witnesses' qualifications as employee experts and as evidence of secondary considerations.   The jury will be allowed to hear such evidence and weigh it accordingly. Defendants' motion no. 11 will be denied.

### E.  Defendants' Motion to Exclude Certain Testimony of Plaintiffs' Expert James Steel, dkt. #411

Defendants ask that this court preclude Steel from offering an expert opinion on non-obviousness of the '082, '740 and '104 patents because Steel testified at his deposition that he analyzed obviousness to a person of ordinary skill in the art in 1997 rather than in 2001, the priority date of the three patents.   Steel did testify at one point that he considered September 8, 1997, the filing date of the '482 patent, when conducting his invalidity analysis of the three patents.   Steel Dep. Tr., dkt. #367, at 14-15.   However, as plaintiffs point out, he states in his report and other portions of his deposition testimony that he evaluated obviousness for the three patents as of 2001.   Steel Dep. Tr., dkt. #367 at 14 and 30-31; Steel Expert Rep., dkt. #96 at 184.   Although defendants admit that Steel refers to 2001 in his report, they argue that those particular opinions are inconsistent with plaintiffs' own admissions of the state of the art in 2001.   They also contend that Steel based his analysis of the Ryan and Yamamoto references on the mid-1990s.

31

A review of Steel's report suggests that defendants have interpreted Steel's statements incorrectly.  Even if defendants are correct, however, their criticisms show only that Steel provided inconsistent testimony and that his opinion contradicts some evidence of the state of the art in 2001.  These facts do not make his report unreliable; they go to the weight that the jury should give to Steel's opinion and are fodder for cross examination at trial. Accordingly, defendants' motion will be denied.

F.  Defendants' Motion to Exclude Certain Testimony from Plaintiffs' Expert
Paul Ludwick, dkt. #413

Defendants ask the court to bar Ludwick from testifying on whether speech recognition technology was enabled in the prior art (specifically the Ryan reference) or the asserted patents and whether internet protocol connections constitute other types of communication connections or are equivalent to them.  Defendants argue that Ludwick admitted in his deposition that he did not consider himself an expert in either speech recognition or internet protocol technologies and stated that his opinions regarding enablement of speech recognition were based on "internet research" of an unknown source. Dkt. #139 at 155 and 209; dkt. #359 at 77, 83, 157-58.

Ludwick's testimony is not inadmissible as unreliable merely because he testified that he was not an expert in certain areas not directly related to the technology at issue in this case or because he performed research on the internet.  Plaintiffs point to relevant experiences and projects on which Ludwick has worked in incorporating both internet protocol and speech recognition software in relay services.  I am satisfied that Ludwick is

32

qualified to talk about the use (or lack of use) of speech recognition software and internet protocol in relay services on the basis of his personal experience in designing and managing relay services and assessing whether speech recognition software could have been used in relay services in the 1990s.  However, defendants raise a valid concern about his statements related to the basis for the following opinion:  "[m]any speech recognition experts agree that a computer with a minimum processing speed of 200 megahertz is required for continuous speech recognition applications."  Dkt. #278, exh. 2 at 9.  At his deposition, he said that he reached this opinion by "simply [doing] some research on the internet at speech recognition websites to find out some more information."  Dkt. #139 at p. 209-10.  He also said that he had no other basis for this opinion.  Ludwick appears to have no personal knowledge of the particular computing power needed to run speech recognition software and plaintiffs have not identified the specific source or sources of that opinion.  Accordingly, Ludwick will not be allowed to testify on this specific issue.

With respect to internet protocol connections, plaintiffs correctly point out that there should not be a need for Ludwick or any other expert to testify about the equivalency of those connections to telephone connections because I have construed the "telephone" terms as not excluding internet protocol connections.

In sum, although Ludwick is not qualified to testify about the technical aspects of speech recognition software, he will be allowed to state an opinion on what he observed with respect to its performance and function within a relay service.  The same applies to internet protocol connections.  Ludwick is sufficiently qualified to discuss how internet protocol

33

connections function within a relay system to offer opinions about functional equivalence or non-infringing alternatives.  Defendants will be free to cross examine Ludwick on the extent of his experience and knowledge with respect to both areas of technology.


G.  Defendants' Motion to Exclude Evidence Regarding Secondary Conditions of
Nonobviousness, dkt. #456

In attempting to rebut evidence that a patent claim is invalid because it is obvious under 35 U.S.C. § 103, a patent owner may submit evidence of objective factors that indicate that the invention is not obvious.  Source Search Technologies, LLC v. LendingTree, LLC, 588 F.3d 1063, 1069 (Fed. Cir. 2009). This motion relates to the extent to which plaintiffs may submit evidence at trial on those objective, or "secondary" factors.  I am granting defendants' motion with respect to their arguments that (1) plaintiffs are not entitled to a presumption that the commercial success of their products was the result of the patents in this case; and (2) plaintiffs may not argue that their products met an unfelt need for "nearly simultaneous" captions.  I am denying the motion in all other respects.


1.  Commercial success

"Commercial value is indeed one of the indicia of nonobviousness . . . because an invention that has commercial value is likely to come on the market very shortly after the idea constituting the invention . . . became obvious; if the invention did not appear so soon despite its value in the market, this is some evidence that it wasn't obvious after all." Ritchie v. Vast Resources, Inc., 563 F.3d 1334, 1336 (Fed. Cir. 2009) (Posner, J.).  However,

because "[t]he commercial success of a product can have many causes unrelated to patentable inventiveness," id., "[e]vidence of commercial success . . . is only significant if there is a nexus between the claimed invention and the commercial success." Ormco Corp. v. Align Technology, Inc., 463 F.3d 1299, 1311–12 (Fed. Cir. 2006).

The first issue in dispute is whether plaintiffs are entitled to a presumption of a nexus. Plaintiffs say that they are because their products "perform the elements of the asserted claims," Plts.' Br., dkt. #519, at 2, but that is not the test.  Rather, the question is whether plaintiffs' products are "coextensive" with the patent claims.  Brown & Williamson Tobacco Corp. v. Philip Morris Inc., 229 F.3d 1120, 1130 (Fed. Cir. 2000).  Defendants argue that plaintiffs' products are not coextensive with the claims because the products include many features that are not included in plaintiffs' patents. Because it is plaintiffs' burden to show that they are entitled to a presumption, Demaco Corp. v. F. Von Langsdorff Licensing Ltd., 851 F.2d 1387, 1392 (Fed. Cir. 1988), and plaintiffs have not developed an argument under the correct standard, I conclude that they are not entitled to a presumption.

The next issue is whether plaintiffs may present any evidence regarding the commercial success of their products as evidence of nonobviousness.  Defendants argue that plaintiffs have not presented sufficient evidence to allow a reasonable jury to find a link between plaintiffs' inventions and the commercial success of their products, but that is a thinly-veiled motion for summary judgment, not a proper motion in limine.  Accordingly, I conclude that both sides may put in whatever admissible evidence they have regarding the reasons for the commercial success of plaintiffs' products.  If defendants believe that the

evidence at trial shows as a matter of law that plaintiffs' patents are invalid despite their commercial success, defendants will be free to file a motion under Fed. R. Civ. P. 50 at the appropriate time.

2.  Long-felt need

"The existence of an enduring, unmet need is strong evidence that the invention is novel, not obvious, and not anticipated. If people are clamoring for a solution, and the best minds do not find it for years, that is practical evidence . . . of the state of knowledge." Matter of Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation, 831 F. Supp. 1354, 1378 (N.D. Ill. 1993) (Easterbrook, J.).

Defendants assert two arguments about this factor.  First, they say that plaintiffs do not have sufficient evidence to support it, but again, I decline to consider that argument because defendants should have raised it in a motion for summary judgment.

Second, defendants assert a narrower argument that plaintiffs' experts should not be permitted to testify that there was a long-felt need for "nearly simultaneous" revoiced captions and voice because plaintiffs' patents in this case do not include that requirement. Defendants rely on a passage in the summary judgment opinion that "none of the claims at issue require real-time revoicing or any other temporal limitation regarding the speed at which the claimed steps must be performed." Dkt. #351 at 66.

In response, plaintiffs do not argue explicitly that any of their patents include a temporal limitation.  Instead, they cite Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.,

776 F.2d 281, 306 n.42 (Fed. Cir. 1985), for the proposition that "[c]ase law requires that a nexus be established between the merits of the claimed invention and the evidence prof[f]erred on secondary considerations."  Under Ashland, plaintiffs say, it is enough if the "asserted claims *result* in the assisted user receiving the revoiced captions and voice of the hearing user substantially simultaneously."  Plts.' Br., dkt. #519, at 12 (emphasis in original).  However, even if I accept plaintiffs' interpretation of the standard, the passage of the expert report they cite is simply a conclusion without any accompanying explanation to support a view that the claimed inventions necessarily lead to "nearly simultaneous" captions.  Id. (quoting Ludwick Validity Rep., dkt. #98, at 258 (asserted claims "include elements that result in the assisted user receiving the revoiced captions and voice of the hearing [user] substantially simultaneously")).  In their brief, plaintiffs state that "use of the term 'caption' or other description of voice and text both going to the user, implies synchronicity between the voice and text."  Id. at 11-12.  However, that appears to be an argument about claim construction, an argument that is both undeveloped and inconsistent with the summary judgment opinion.  Because plaintiffs have not supported their position with an expert opinion or a developed legal argument, I am granting this aspect of defendants' motion.

3.  Praise

Plaintiffs wish to rely on praise they received from their customers and from Sprint and Hamilton as evidence of nonobviousness. Defendants argue that "industry praise" may

37

be evidence of nonobviousness, <u>Apple Inc. v. International Trade Commission</u>, 725 F.3d 1356, 1366 (Fed. Cir. 2013), but praise from customers and "resellers" such as Sprint and Hamilton are not.

The parties debate whether Sprint and Hamilton are "competitors" or "resellers" of plaintiffs, but I need not resolve that issue for the purpose of this motion. Although praise from a competitor might be more indicative of nonobviousness than a praise from a reseller, defendants cite no authority for the view that praise from "friendlier" sources is inadmissible. Defendants are free to point out any reasons to question the praise on cross-examination. I reach the same conclusion with respect to the customers. Praise from customers is not as compelling as praise from experts in the industry but, again, defendants do not cite any authority for the view that plaintiffs' evidence is inadmissible. Accordingly, I am denying this part of defendants' motion in limine.


ORDER

IT IS ORDERED that

1. Defendants' motion to adopt their proposed claim construction, dkt. #478, is DENIED. The term "captioned telephone display device" in claim 1 of the '346 patent is construed as not being limited to a device that is connected to or integrated with a conventional telephone or that filters out text signals.

2. Plaintiffs' motion in limine no. 1, dkt. #418, is DENIED.

3. Plaintiffs' motion in limine no. 2, dkt. #420, is DENIED as unnecessary.

38

4.  Plaintiffs' motion in limine no. 3, dkt. #422, is GRANTED except that this ruling does not prohibit defendants from introducing evidence that a particular prior art reference was not before the patent office when it reviewed plaintiffs' applications for patents or that a patent has obvious errors.

5.  The ruling on plaintiffs' motion in limine no. 4, dkt. #424, is RESERVED.  If at trial either side believes it needs a ruling on a particular witness or a particular line of questioning, it can request one from the court.

6.  Plaintiffs' motion in limine no. 5, dkt. #426, is GRANTED with respect to evidence submitted purely for the purpose of disclosing plaintiffs' requests for injunctive relief, treble damages and attorneys' fees.

7.  Plaintiffs' motion in limine no. 6, dkt. #428, is GRANTED except that defendants may introduce evidence related to what prior art was or was not before the patent office.

8.  Plaintiffs' motion in limine no. 7, dkt. #435, is DENIED.  However, within three days of the date of this order, defendants shall identify any possible obviousness contentions that they have not identified previously to plaintiffs.

9.  Plaintiffs' motion in limine no. 8, dkt. #437, is DENIED.

10.  Plaintiffs' motion in limine no. 9, dkt. #439, is GRANTED to the extent that defendants cannot show that such evidence is submitted for a relevant reason other than contradicting this court's summary judgment rulings.

11.  Plaintiffs' motion in limine no. 10, dkt. #442, is DENIED on the condition that defendants must show that the particular statements that they intend to introduce at trial meet the conditions outlined in § II.J of this opinion.

12.  Plaintiffs' motion in limine no. 11, dkt. #446, is GRANTED.

13.  Plaintiffs' motion in limine no. 13, dkt. #453, is GRANTED in part and DENIED in part.  Although defendants may not introduce the testimony of Gregg Vanderheiden for the truth of his opinions, defendants may introduce his testimony as evidence of their state of mind.  The parties shall submit a proposed curative instruction by 12 noon on Wednesday, October 1, 2014.

14.  Plaintiffs' motion in limine no. 18, dkt. #471, is GRANTED to the extent that neither party will be allowed to introduce improperly disclosed expert opinions or to argue or present evidence on the existence of claim elements that are inconsistent with the court's claim constructions.  This ruling is subject to the conditions set forth in § II.M of this opinion.

15.  Plaintiffs' motion in limine no. 19, dkt. #470, is DENIED.

16.  Defendants' motion to exclude argument and testimony analyzing invalidity from the perspective of limited art, dkt. #441, is GRANTED.  The relevant art is that of telecommunications and voice-to-text transcription.

17.  Defendants' motion in limine no. 1, dkt. #394, is GRANTED to the extent that plaintiffs may not make any reference to defendants' ownership interests to the jury.

18.  Defendants' motion in limine no. 2, dkt. #395, is GRANTED with respect to references to either of the defendants' overall revenues during the liability phase of trial.  The motion is STAYED with respect to references to defendant Sorenson's size, wealth, revenues and market share during the damages phase of trial.

19.  Defendants' motion in limine no. 6, dkt. #399, is DENIED as moot.

20.  Defendants' motion in limine no. 11, dkt. #404, is DENIED.

21.  Defendants' <u>Daubert</u> motion to exclude testimony of James Steel, dkt. #411, is DENIED.

22.  Defendants' motion to exclude certain testimony from plaintiffs' expert Paul Ludwick, dkt. #413, is GRANTED with respect to Ludwick's opinions about the technical aspects of speech recognition software and DENIED in all other respects.  Ludwick may discuss what he observed with respect to the performance and function of speech recognition and internet protocol connection technology within a relay service.  He also may state an opinion on whether internet protocol connections constitute or are equivalent to other types of telecommunications connections.

23.  Defendants' motion to exclude evidence of secondary considerations, dkt. #456, is GRANTED with respect to defendants' arguments that (1) plaintiffs are not entitled to a presumption that the commercial success of their products was the result of the patents in this case; and (2) plaintiffs may not argue that their products met an unfelt need for "nearly simultaneous" captions.  The motion is DENIED in all other respects.

Entered this 29th day of September, 2014.

BY THE COURT:

/s/
BARBARA B. CRABB
District Judge