IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ULTRATEC, INC. and CAPTEL, INC.,

                             OPINION AND ORDER

           Plaintiffs,

                             13-cv-346-bbc

      v.

SORENSON COMMUNICATIONS, INC.
and CAPTIONCALL, LLC,

           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

On September 23, 2014, this court issued an order, *sua sponte*, raising the question whether plaintiffs have a viable theory of induced infringement for claims 1-8 of the '835 patent and claim 2 of the '740 patent, all of which are method claims.  Dkt. #534.  The court directed plaintiffs to show cause why they should be allowed to proceed. Having considered their response to that order, defendants' response thereto, the unsolicited replies filed by the parties and the parties' prior submissions on this issue, I find that plaintiffs have no legal basis for their claims of induced infringement.

To establish a claim of induced infringement, a party must show, first, that there has been direct infringement, and second, that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.  Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1320 (Fed. Cir. 2009) (citing Minnesota Mining & Mfg. Co. v. Chemque, Inc., 303 F.3d 1294, 1304–05 (Fed. Cir. 2002) (citations omitted)).  To establish direct infringement of a method patent, the plaintiff must show that

all the steps are carried out.   Limelight Networks, Inc. v. Akamai Techs., Inc., 134 S. Ct.

2111, 2117 (2014).  Under current Federal Circuit law, "a method's steps have not all been

performed as claimed by the patent unless they are all attributable to the same defendant,

either because the defendant actually performed those steps or because he directed or

controlled others who performed them."  Id. (citing Muniauction, Inc. v. Thomson Corp.,

532 F. 3d 1318, 1329-30 (Fed. Cir. 2008)).

Each of the method claims presented by the '835 and '740 patents specifies that some

method steps are to be performed by the "assisted user," while other steps are to be

performed "at the relay."  Conceding that no single party actually performs every step of the

claimed methods, plaintiffs seek to establish that defendants' customers (the "assisted users")

direct and control defendants in performing those steps to be performed "at the relay" such

that the performance of all of the steps of the method can be attributed to the assisted users.

Muniauction, 532 F. 3d at 1329 (discussing direction and control standard for direct

infringement); BMC Resources, Inc. v. Paymentech, L.P., 498 F.3d 1373, 1379 (Fed. Cir.

2007) ("In the context of patent infringement, a defendant cannot thus avoid liability for

direct infringement by having someone else carry out one or more of the claimed steps on

its behalf.").  Having thus alleged that each customer is a direct infringer, plaintiffs then rely

on an inducement theory in an attempt to make *defendants* liable for the acts of direct

infringement, asserting that defendants induced the assisted users to become direct infringers

by encouraging and instructing them to initiate captioned calls.

According to plaintiffs, they will show that

turning on captions by the end user starts a chain reaction over which Defendants have no control because their system is automatic, and must be that way.  Defendants will caption any call if the end user (by pushing a button) directs them to.  As a result, the Defendants will practice the method steps of the asserted claims anytime the end user directs the Defendants to provide captioning.  The technology is automatic and call assistants have no discretion to refuse to caption.  Further, Defendants induce their customers to enable captioning and as a result of this inducement, the end users do indeed perform certain method steps and direct or control the Defendants to perform the remaining steps.

Dkt. #529.  In a nutshell, plaintiffs contend that the assisted users "direct and control" defendants to perform the requisite steps of the claimed methods merely by initiating a captioned call.

Plaintiffs have identified two district court cases that they say stand for the proposition that it is not improper to impose liability on a party other than the party who "directs and controls" the performance of method steps by another:  <u>Nuance Communications, Inc. v. Tellme Networks, Inc.</u>, 707 F. Supp. 2d 472 (D. Del. 2010), and <u>kSolo, Inc. v. Catona</u>, 2008 WL 4906115 (C.D. Cal. 2008). Although defendants argue that these cases are inapposite, I find that they offer at least some support for the notion that a "direction and control" theory of direct infringement can be combined with an inducement claim to impose liability on the alleged inducer, that is, the party performing the steps of the method, rather than on the alleged "mastermind" who directs and controls another's performance of the method steps.  Where I have more trouble, however, is accepting the proposition that the assisted user's mere initiation of a service that is programmed to automatically perform certain steps of the claimed methods is sufficient to establish the direction and control contemplated by the Federal Circuit.

In BMC Resources, 498 F.3d at 1378–82, and Muniauction, 532 F.3d at 1328–30, the Federal Circuit addressed the requirements for finding direct infringement when no single party performs every step of the asserted claims.  In these cases, the court reaffirmed its their holding that direct infringement occurs only when a single party "performs all of the steps of the process," or "direct[s] or control[s]" the performance of those steps.  "[W]here the actions of multiple parties combine to perform every step of a claimed method, the claim is directly infringed only if one party exercises 'control or direction' over the entire process such that every step is attributable to the controlling party, i.e., the 'mastermind.'"  Id. "At the other end of this multi-party spectrum, mere 'arms-length' cooperation will not give rise to direct infringement by any party."  Id.; see also BMC, 498 F.3d at 1381 ("The concerns over a party avoiding infringement by arms-length cooperation can usually be offset by proper claim drafting.  A patentee can usually structure a claim to capture infringement by a single party.").

In Muniauction, the Federal Circuit reversed a district court's denial of a motion for judgment as a matter of law following a jury verdict of infringement. The patent at issue related to municipal bond auctions conducted over an electronic network, such as the internet, and it was undisputed that no single party performed every step of the asserted claims. Id. at 1328–29.  For example, at least one of the claimed steps was performed by the bidders, who inputted data, and most of the remaining steps were performed by the auctioneer's system.  Id. The jury found the defendant liable under a theory of joint infringement based on evidence of a "connection" between the defendant auctioneer and the

4

bidders. Id. at 1329–30. The Federal Circuit reversed, holding "[the fact that the Thomson bidding system] controls access to its systems and instructs bidders on its use is not sufficient to incur liability for direct infringement." Id. at 1330. The court added that "the control or direction standard is satisfied in situations where the law would traditionally hold the accused direct infringer vicariously liable for the acts committed by another party that are required to complete performance of a claimed method." Id.

In BMC Resources, 498 F.3d at 1375, the Federal Circuit affirmed a summary judgment of noninfringement, agreeing that the plaintiff had failed to adduce sufficient evidence to create a genuine issue of material fact on the question whether the defendant controlled or directed the activity of third party debit networks. The patent at issue claimed a method for processing debit transactions without a personal identification number and required the combined actions of multiple actors, including the payee's agent, a remote payment network and the card-issuing financial institutions. The plaintiff proffered evidence to establish some relationship between the defendant (which processed financial transactions for clients as a third party) and the debit networks, such as the fact that the defendant provided data including debit card numbers, names, amounts of purchase, etc., to the debit networks. However, the court held that it was genuinely disputed whether the defendant controlled or directed the activity of the debit networks because there was no evidence that the defendant also provided instructions or directions regarding the use of that data. Id. at 1381.

Applying these principles to the facts adduced by plaintiffs, see dkt. 529 at 10-11,

it is plain that plaintiffs lack sufficient evidence to raise a triable issue of fact regarding the assisted users' control over defendants. Plaintiffs' theory of "direction and control" is that CaptionCall's relay system is designed in such a way as to "always and automatically" generate and transmit captions whenever any new call is initiated by a user. That the defendants allegedly *lack* control to decline to provide captioning to incoming calls, however, is not the same as showing that assisted users exercise the necessary control or direction over the performance of the method steps such that "every step is attributable to [the users]." Notably, plaintiffs do not allege that the assisted users control CaptionCall's servers or have any influence over the operation of its call centers. They do not allege that the assisted users provide any instructions or directions to CaptionCall about how it should generate captions and they do not allege that the assisted users receive any portion of the payments received by CaptionCall for providing its relay service. In fact, plaintiffs do not even allege that the customers have any knowledge whatsoever of where, how or by whom captions are generated. The assisted users, in other words, are clueless masterminds.

Even accepting plaintiffs' contention that "nefarious intent" is not a prerequisite to a finding that a party "directs or controls" another, it stretches Muniauction and BMC Resources too far to find that the performance of all of the steps in the asserted method patents can be attributed to the assisted users merely because they perform one of the steps of the method by initiating a captioned call. The cases cited in defendants' brief, dkt. #543 at 9-10, nn. 6 and 7, make this clear. Indeed, even actions such as "[m]aking information available to the third party, prompting the third party, instructing the third party, or

facilitating or arranging for the third-party's involvement in the alleged infringement" are generally not sufficient to establish the necessary direction and control.  Emtel, Inc. v. Lipidlabs, Inc., 583 F. Supp. 2d 811, 839 (S.D. Tex. 2008);  see also Muniauction, 532 F.3d at 1329; BMC Resources, 498 F.3d at 1381; Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1311 (Fed. Cir. 2005) (defendant did not directly infringe apparatus patent for orthopedic surgical implants even though defendant's representatives appeared in operating room and identified instruments used by surgeons, who in turn made claimed apparatus, where surgeons were "not agents of Medtronic"); Global Patent Holdings, LLC v. Panthers BRHC LLC, 585 F. Supp. 2d 1331, 1335 (S.D. Fla. 2008) (plaintiff's allegations that defendant "controlled" action by remote user's computer by putting Javascript programs on users' computers insufficient to establish "direction and control" over remote user where plaintiffs did not allege that remote users were contractually bound to visit defendants' website, that remote users were defendant's agents who visited website within scope of their agency relationship or any facts that would render defendant otherwise vicariously liable for acts of remote user).  This case involves even sparser evidence of direction and control, with the only step allegedly taken by the assisted users being the initiation of a captioned call.

One case particularly on point is Gammino v. Cellco Partnership, 527 F. Supp. 2d 395 (E.D. Penn. 2007).  The patents alleged to have been infringed in that case were for processes and apparatuses for preventing telephones from making international calls.  The defendant owned and operated pay telephones throughout the country and purchased

telephone service from a variety of local providers who provided international call blocking as part of the service.  The defendant had no knowledge of what processes, methods or apparatuses the local providers used to provide these call-blocking features.  Id. at 396.

Although there was no evidence in Gammino that the defendant performed the patented step of evaluating the dialing sequence to determine whether it was one of the blocked sequences, the plaintiff sued for direct infringement of the method patents.  Noting that a party cannot avoid infringement "simply by contracting out steps of a patented process to another entity," id. at 398, the court nonetheless found no reason to find the defendant liable under a direction and control theory because "there was no evidence that defendant controlled how the local providers went about blocking international calls."  Id. As the court explained,

> [Plaintiff's] primary evidence in this case consists of tests that show that [defendant's] pay telephones successfully block calls made using the dialing sequences that [plaintiff's] methods block.  Even if this evidence is (marginally) probative that someone infringes [plaintiff's] patent, it does not support the conclusion that [defendant] is the infringing party, particularly in light of the unrebutted evidence that [defendant] does not know how the call-blocking features it purchases work.

Id. at 398-99 (E.D. Pa. 2007), dismissed sub nom, Gammino v. Davel Communications, Inc., 363 F. Appx 739 (Fed. Cir. 2009)).

As in Gammino, there is no evidence in this case that the assisted users exercise any control over how defendants provide captioning service, much less that they know how the captioning service works.  Under this scenario, there is simply no basis on which to find that "the law would traditionally hold the [assisted users] vicariously liable for the acts committed

by [defendants]." Muniauction, 532 F. 3d at 1330.

The cases cited by plaintiffs, Nuance Communications, 707 F. Supp. 2d 472, and kSolo, 2008 WL 4906115, are not inconsistent with this conclusion. In Nuance, 707 F. Supp. 2d at 484, the court found the evidence sufficient to show that the defendant's customers (the directory assistance providers for AT&T and Verizon) directly infringed defendant's patent (which described both a method and apparatus for processing spoken information so that an automated system is able to complete a task with minimal contact with a caller) by controlling the defendant through "numerous" contracts it had with defendant. The court did not analyze the contracts at length because the defendant did not argue that direct infringement could not exist under the plaintiff's direction and control theory. Id. at 484 and n.15. However, it noted that the defendant had granted nonexclusive licenses in its customer contracts to access certain features of the Tellme data centers or agreed to develop directory assistance platforms and had also granted a right to inspect the Tellme data centers. Id. at n.6. In this case, by contrast, I do not understand plaintiffs to be advancing a theory of "direction and control" based on a contractual relationship between the assisted users and defendants.

The patent at issue in kSolo disclosed a method for creating custom electronic audio greeting cards by computer in several steps: selecting a pre-recorded song from a song database, downloading that song from a server to a client computer, recording a vocal track on the client computer while the pre-recorded song is playing, mixing the track with the pre-recorded song, saving that mix onto the server, assembling the mix into an electronic greeting

9

card, and delivering the electronic greeting card.  2008 WL 4906115, *2.  Plaintiffs accused

defendant of operating a service on its website that used the claimed method.  The defendant

moved for judgment on the pleadings and summary judgment, asserting that infringement

required a minimum of two parties and that the plaintiffs could not show the necessary

direction and control of one party over the other to establish direct infringement.  Id. at *3.

The court held that, until it construed the claims at issue, it could not find as a matter of law

that the plaintiffs would not be able to show that users of kSolo.com infringed the patent,

either by actually performing all of the elements in the patented claims at issue with the

assistance of defendant's server or by performing some steps of the method and then

directing or controlling the server in its performance of the remaining elements of the claims

at issue.  Id. at *4.

The kSolo court's conclusion on direction and control is entitled to limited weight

given its conditional nature.  Apart from that, the facts tending to show direction and

control on the part of kSolo's users are far more robust than those in this case.  The users

in that case arguably performed each of the steps of the method themselves, albeit with

assistance from defendant's server.  Here, by contrast, plaintiffs allege that defendants' users'

only involvement with the performance of the method steps is to "initiate" a chain reaction

by pressing a button.

Finally, plaintiffs attempt to establish the viability of their theory by pointing to a

number of cases involving systems claims.  This is not an apt comparison.  Method claims

and systems claims are different.  Systems claims are considered holistically, and a system

is considered to have been "used" when "the system as a whole is put into service."  NTP, Inc. v. Research in Motion, Ltd., 418 F. 3d 1282, 1317 (Fed. Cir. 2005).  Thus, an alleged infringer of a system can be deemed to have "used" the entire system merely by performing certain initiating tasks that cause other tasks to be performed, even if those other tasks are performed by other parties.  Method or process claims, however, have no corresponding "whole operable assembly."  Id.  As the court explained in Research in Motion, 418 F. 3d at 1318,

> Because a process is nothing more than the sequence of actions of which it is comprised, the use of a process necessarily involves doing or performing each of the steps recited. This is unlike use of a system as a whole, in which the components are used collectively, not individually.

Here, although the assisted users arguably can be said to have used plaintiffs' patented *systems* for captioning calls merely by performing the initiating step of pressing the "captions on" button on their CaptionCall phones, this logic does not extend to the method claims, which "necessarily involve[ ] doing or performing each of the steps recited."  There being no evidence that the assisted users either perform each of the steps of the method or direct and control defendants in the performance of those steps such that the users can be found vicariously liable for the acts of defendants, as a matter of law plaintiffs cannot establish the direct infringement necessary to support their inducement claims with respect to the '835 and '740 patents.

ORDER

IT IS ORDERED that plaintiffs' claims that defendants' induced infringement of

claims 1-8 of the '835 patent and claim 2 of the '740 patent are DISMISSED.

Entered this 1st day of October, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge