IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ULTRATEC, INC. and CAPTEL, INC.,

                                                            OPINION AND ORDER

                Plaintiffs,

                                                        13-cv-346-bbc

       v.

SORENSON COMMUNICATIONS, INC.
and CAPTIONCALL, LLC,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This civil action involving claims of patent infringement and counterclaims of invalidity is scheduled for trial beginning on October 14, 2014.  Before the court is plaintiffs' motion for partial reconsideration of the court's September 29, 2014 order granting in part defendants' <u>Daubert</u> motion of secondary considerations.  Dkt. #560.

On summary judgment, the court determined that claim 1 of the '482 patent, claims 1 and 2 of the '314 patent and claim 7 of the '578 patent did not include a temporal limitation with respect to their revoicing elements.  Dkt. #351 at 66.  Relying on this holding, defendants filed a motion in limine asking that plaintiffs not be allowed to argue with respect to <u>any</u> asserted claim that there was a long-felt need for revoiced captions to be presented nearly simultaneously with the hearing user's voice because plaintiffs' patents do not include that requirement.  Dfts. Mtn. to Excl. Evid. of Secondary Conditions of Nonobviousness, dkt. #456.  Plaintiffs responded that "use of the term 'caption' or other

description of voice and text both going to the user, implies synchronicity between the voice and text." Plts.' Br., dkt. #519 at 11-12. Concluding that plaintiffs were making an undeveloped argument about claim construction that seemed inconsistent with the court's ruling on summary judgment, I granted this aspect of defendants' motion in limine. Dkt. #546 at 37.

Plaintiffs now ask the court to reconsider that ruling and deny defendants' motion with respect to plaintiffs' ability to show that claim 1 of the '346 patent, claims 7 and 8 of the '835 patent, claim 1 of the '082 patent, claim 2 of the '740 patent and claims 7, 8 and 11 of the '578 patent met a long felt need for nearly simultaneous voice and captions. (Plaintiffs do not challenge the ruling with respect to claim 1 of the '482 patent or claims 1 and 2 of the '314 patent.) In their brief in support of the motion, plaintiffs argued that the term "caption" in these claims meant "nearly simultaneous" text transcription of the hearing user's voice. At the final pretrial conference, I asked plaintiffs to explain what appeared to be a request for claims construction. In response, plaintiffs have filed a supplemental memorandum requesting the construction of the term "caption" and defining the meaning of "nearly simultaneous." Dkt. #567.

For the reasons stated below, I am denying plaintiffs' motion for partial reconsideration and not adopting plaintiffs' proposed construction of the term "caption," or defendants' proposal that, if the court believes construction is necessary, the term be construed as simply "text transcription of the spoken word."

OPINION

Plaintiffs argue that the term "caption" appearing in claim 1 of the '346 patent, claims 7 and 8 of the '835 patent, claim 1 of the '082 patent, claim 2 of the '740 patent and claims 7, 8 and 11 of the '578 patent means "text transcription of spoken word that is presented nearly simultaneously with the spoken word." They define "nearly simultaneous" as "sufficiently synchronous to allow an assisted user to efficiently and effectively participate in the conversation." Defendants propose that "caption" means simply "text transcription of spoken word" and does not include any temporal limitation.

As defendants point out, none of the claims identified by plaintiffs expressly state that the text must be displayed nearly simultaneously or synchronously with the voice of the hearing user. Plaintiffs argue that "the combined elements of transcribing the voice of the hearing user using revoicing together with the assisted user receiving both the voice and text transcriptions supports [the conclusion] that those 'captions' are provided to the assisted user nearly simultaneously with the voice of the hearing user." Dkt. #567 at 4. Although some of the elements identified by plaintiffs, particularly those in claim 1 of the '346 patent, suggest that the voice and text may be transmitted together, there is no requirement in any of the elements that the two be displayed nearly simultaneously. For example, claim 1 of the '346 patent recites the step of "transmitting both the digital text message stream and the voice . . . to the assisted user." However, the claim goes on to recite the step of "displaying the digital text stream to a captioned telephone display device" and does not state that the

digital text stream is displayed along with or at nearly the same time as the assisted user receives the voice.  The other claims at issue make even less association between the transmission of the text and voice and do not discuss displaying the text with the voice or at nearly the same time.

Plaintiffs cite several statements from the specifications of the '346 and '835 patents that suggest that the captions generated by revoicing are provided to the assisted user nearly simultaneously with the spoken words.  For example, the '346 patent specification states that "a device known as the captioned telephone, described below, permits telephone users who have hearing difficulty in use of the telephone by providing a near-simultaneous text transcription of telephone conversations, the text being provided by relay."  Col. 3, lns. 35-39.  The '835 patent specification explains that an embodiment of "[t]his device is thus intended to assist the user to understand a greater portion of the conversation by providing a visually readable transcription of the text of the telephone conversation so that the assisted user can read any words that he or she cannot hear properly."  Col. 9, lns. 20-25.  The specifications of the '346 and '835 patents also explain that revoicing increases the speed of the overall communications between the hearing and assisted users.  '346 patent, col. 3, lns. 25-28 ("The CA [call assistant] re-voices the words spoken by a hearing user, with the voice recognition software translating the voice into text, so that near to simultaneous voice and text of the voice can be delivered to an assisted user."); '835 patent, col. 2, lns. 44-49 ("It is an advantage of the invention described herein that the call assistant does not have to type most, if any, of the words spoken by the hearing person . . . so that the overall speed of

communications . . . is dramatically increased."); Id. at col. 11, lns. 16-20 ("Since the revoicing relay operates with only a very slight time delay, the text display for the assisted user would trail the hearing person's voice slightly, but the text would still assist the user in comprehending the conversation.").

The cited language in the specifications makes it clear that the intended result of the inventions, particularly with respect to revoicing, is to increase the speed at which captions are generated and provided to the assisted user. However, neither the claims at issue nor the relevant specifications require a particular transcription speed or require captions and voice to be delivered nearly simultaneously. Even if revoicing results in faster transcriptions, whether the captions appear "nearly simultaneously" with the spoken word seems to depend in large part on the type of voice transcription software used, and the specific software is not an element in the claims at issue.

In further support of their proposed construction, plaintiffs point to a FCC declaratory ruling defining the type of captioned telephone voice-carry-over service that the FCC recognized as telephone relay service (commonly referred to as "TRS") as any service that allows the user to simultaneously listen to what the other party has said and read the text of it. Plaintiffs note also that the FCC has adopted rules requiring television broadcast captioning to correspond to the spoken word to the greatest extent possible. This may be true but, as defendants argue, neither of these mandates supports plaintiffs' proposed construction. If the term caption or captioned telephone service *inherently* required nearly simultaneous delivery of text and voice, there would have been no need for the FCC to

specify that this was the type of captioned telephone service it was recognizing or to require television captions to be as synchronous as possible.

Another problem with plaintiffs' proposed construction is that it relies on the indefinite and subjective term "nearly simultaneous." In response to the court's skepticism at the final pretrial conference, plaintiffs attempt to clarify "nearly simultaneous" as meaning "sufficiently synchronous to allow an assisted user to efficiently and effectively participate in the conversation," a definition that is equally vague and indefinite. As defendants point out, whether an assisted user efficiently and effectively participates in the conversation is a subjective determination that would have to be made on a call-by-call basis. Interval Licensing LLC v. AOL, Inc., 2013-1282, 2014 WL 4435871 (Fed. Cir. Sept. 10, 2014) (finding that patent phrase "unobtrusive manner that does not distract a user" offers no objective indication of manner in which content images are to be displayed and depends on preferences and interactions of particular user). In sum, I am not convinced that the term "caption" can be defined as the nearly simultaneous presentation of voice and text, even when revoicing is used.

In their initial brief in support of their motion for reconsideration, plaintiffs made the alternative argument that even if the court did not agree with their definition of "caption," they should be allowed to argue that practicing the steps of the claimed methods necessarily result in near-simultaneous delivery of voice and captions, and therefore, satisfied a long-felt need. Although defendants focused on plaintiffs' supplemental brief related to claims construction, and did not discuss plaintiffs' alternative argument specifically, they suggest

that the satisfaction of a long-felt need must be related directly to the specific elements claimed in the patents at issue.  In other words, defendants say that if the claims at issue do not recite expressly the element of nearly simultaneous delivery of voice and captions, plaintiffs cannot argue that their patents met a long-felt need for this feature.  Defendants make a good point.

In Sjolund v. Musland, 847 F.2d 1573, 1582 (Fed. Cir. 1988), the Court of Appeals for the Federal Circuit held that it was constrained, "as was the jury, to consider whether the *claimed invention* satisfied a long felt need, or solved problems where others had failed."  Id. At 1582 (emphasis in original).  See also 2 Donald S. Chisum, Chisum on Patents § 5.05[1][a] and [c] (Matthew Bender 2014 ed.) (noting that relevance of long-felt need depends on certain premises, including relation to claimed invention).  In Sjolund, the court of appeals acknowledged that the patentee's invention solved certain problems and satisfied a long felt need but stated that "[b]ecause the lattice construction . . . is not part of [the] claimed invention, the advantages ascribed to the lattice construction are irrelevant in terms of the obviousness analysis."  Id. (citing In re Vamco Machine & Tool, Inc., 752 F.2d 1564, 1577 (Fed. Cir. 1985)).  In a later case addressing the secondary consideration of commercial success, the Federal Circuit explained that a nexus between the merits of the invention and its commercial success "is required to prove that the commercial success is not ascribable to other irrelevant commercial and economic factors.  However, prima facie evidence of nexus is established if there was commercial success and if the *invention disclosed in the patent* was that which was commercially successful."  Ryko Manufacturing Co. v.

Nu-Star, Inc., 950 F.2d 714, 719 (Fed. Cir. 1991).   See also Sjolund, 847 F.2d at 1582

(noting same nexus standard applies to long-felt need and commercial success).

Citing two district court cases, plaintiffs contend that courts have not limited

evidence of long-felt need to situations in which the solution to a long-felt need itself was

expressly claimed in the patents-in-suit.   K-Tec, Inc. v. Vita-Mix Corp., 729 F. Supp. 2d

1312, 1326-27 (D. Utah 2010), aff'd, 696 F.3d 1364 (Fed. Cir. 2012); Pfizer Inc. v. Teva

Pharmaceuticals USA, Inc., 460 F. Supp. 2d 650, 653-54 (D.N.J. 2006).  However, neither

case addressed the specific problem presented in this case or discussed the nexus

requirement.  Accordingly, because nearly simultaneous delivery of the voice and text is not

part of the claimed invention, I will not allow plaintiffs to present evidence and argument

that the claims at issue necessarily result in the satisfaction of a long-felt need for nearly

simultaneous delivery of voice and captions to the assisted user.


ORDER

IT IS ORDERED that plaintiffs' motion for partial reconsideration of the court's

September 29, 2014 order granting in part defendants' Daubert motion of secondary

considerations, dkt. #560, is DENIED.

Entered this 10th day of October, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

8